IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Angelo Shenault Jr., | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | No. 18-cv-3478 |
| *-vs-* | ) | |
| | ) | *(Jury Demand)* |
| City of Chicago, Ronald Watts, | ) | |
| Phillip Cline, Debra Kirby, Brian | ) | |
| Bolton, Robert Gonzalez, Alvin | ) | |
| Jones, Manuel Leano, Lamonica | ) | |
| Lewis, Kallatt Mohammed, | ) | |
| Douglas Nichols Jr., and Elsworth | ) | |
| Smith Jr., | ) | |
| | ) | |
| *Defendants* | ) | |

## COMPLAINT

Plaintiff, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

### I. Parties

2. Plaintiff Angelo Shenault Jr. is a resident of the Northern District of Illinois.

3. Defendant City of Chicago is an Illinois municipal corporation.

4. Defendants Ronald Watts, Brian Bolton, Robert Gonzalez, Alvin Jones, Manuel Leano, Lamonica Lewis, Kallatt Mohammed, Douglas Nichols Jr., and Elsworth Smith Jr. (the "individual officer defendants")

were at all relevant times acting under color of their offices as Chicago police officers. Plaintiff sues the individual officer defendants in their individual capacities.

5. Defendant Philip Cline was at all relevant times Superintendent of the Chicago Police Department. Plaintiff sues Cline in his individual capacity.

6. Defendant Debra Kirby was at all relevant times the Assistant Deputy Superintendent of the Chicago Police Department, acting as head of the Chicago Police Department Internal Affairs Division. Plaintiff sues Kirby in her individual capacity.

## II. Overview

7. Plaintiff Angelo Shenault Jr. is one of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

8. The Watts Gang of officers engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges.

9. Several other victims of the Watts Gang are currently prosecuting federal lawsuits. *Baker v. City of Chicago*, No. 16-cv-8940; *White v. City of Chicago*, No. 17-cv-2877; *Powell v. City of Chicago*, No. 17-

cv-5156; *Carter v. City of Chicago*, No. 17-cv-7241; *Forney v. City of Chicago*, No. 18-cv-3474; *Shenault Sr. v. City of Chicago*, 18-cv-3477.

10. High ranking officials within the Chicago Police Department were aware of the Watts Gang's criminal enterprise, but failed to take any action to stop it.

11. The Chicago Police Department's official policies or customs of failing to discipline, supervise, and control its officers, as well as its a "code of silence," were a proximate cause of the Watts Gang's criminal enterprise.

12. On three separate occasions, Watts Gang officers arrested plaintiff without probable cause, fabricated evidence against him, and framed him for drug possession, causing him to serve more than three years in custody.

13. Based on the powerful evidence that has become known about the Watts Gang's nearly decade-long criminal enterprise, the Circuit Court of Cook County has vacated all three convictions and granted plaintiff three certificates of innocence.

14. Plaintiff brings this lawsuit to secure a remedy for his illegal incarceration, which was caused by: the Watts Gang officers, the failure of high-ranking officials within the Chicago Police Department to stop the

Watts Gang, the code of silence within the Chicago Police Department, and the Chicago Police Department's defective discipline policy.

### III.   The First False Arrest and Illegal Prosecution of Plaintiff

15.     On April 4, 2006, plaintiff was arrested by defendants Bolton, Gonzalez, Jones, Mohammed, Nichols, Smith, and Watts (the "April 4, 2006 Arresting Officers") while plaintiff was inside a stairwell in 575 East Browning Avenue at the Ida B. Wells Homes.

16.     At the time of plaintiff's arrest:

a.  None of the April 4, 2006 Arresting Officers had a warrant authorizing the arrest of plaintiff;

b.  None of the April 4, 2006 Arresting Officers believed that a warrant had been issued authorizing the arrest of plaintiff;

c.  None of the April 4, 2006 Arresting Officers had observed plaintiff commit any offense; and

d.  None of the April 4, 2006 Arresting Officers had received information from any source that plaintiff had committed an offense.

17.     After arresting plaintiff, the April 4, 2006 Arresting Officers conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

18. The false story fabricated by the April 4, 2006 Arresting Officers included their false claim that they had arrested plaintiff after seeing him in a common area of the building holding a plastic bag containing drugs.

19. The acts of the April 4, 2006 Arresting Officers in furtherance of their scheme to frame plaintiff included the following:

a. One or more of the April 4, 2006 Arresting Officers prepared police reports containing the false story, and each of the other April 4, 2006 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights;

b. One or more of the April 4, 2006 Arresting Officers attested through the official police reports that they witnessed the false story, and each of the other April 4, 2006 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights;

c. Defendant Watts formally approved one or more of the official police reports, knowing that they contained the false story; and

d. One or more of the April 4, 2006 Arresting Officers communicated the false story to prosecutors, and each of the

other April 4, 2006 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights.

20. The wrongful acts of the April 4, 2006 Arresting Officers were performed with knowledge that the acts would cause plaintiff to be wrongfully held in custody and falsely prosecuted for an offense that had never occurred.

21. Plaintiff was charged with drug possession in Cook County Case Number 06-CR-09651-02 because of the wrongful acts of the April 4, 2006 Arresting Officers.

22. Plaintiff knew that proving that the April 4, 2006 Arresting Officers had concocted the charges against him would not be possible.

23. Accordingly, even though he was innocent, plaintiff, pleaded guilty to drug possession on July 19, 2006, and received a four-year prison sentence.

24. Plaintiff was deprived of liberty during his incarceration because of the above-described wrongful acts of the April 4, 2006 Arresting Officers.

25. Plaintiff was continuously in custody from his arrest on April 4, 2006 until he was released on parole from the Illinois Department of Corrections on February 8, 2007.

### IV. The Second False Arrest and Illegal Prosecution of Plaintiff

26. On March 3, 2008, plaintiff was arrested by defendants Bolton, Jones, Leano, Lewis, Mohammed, Nichols, Smith, and Watts (the "March 3, 2008 Arresting Officers") while plaintiff was in an apartment at 574 East Browning Avenue at the Ida B. Wells Homes.

27. At the time of plaintiff's arrest:

   a. None of the March 3, 2008 Arresting Officers had a warrant authorizing the arrest of plaintiff;

   b. None of the March 3, 2008 Arresting Officers believed that a warrant had been issued authorizing the arrest of plaintiff;

   c. None of the March 3, 2008 Arresting Officers had observed plaintiff commit any offense; and

   d. None of the March 3, 2008 Arresting Officers had received information from any source that plaintiff had committed an offense.

28. After arresting plaintiff, the March 3, 2008 Arresting Officers conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

29. The false story fabricated by the March 3, 2008 Arresting Officers included their false claim that they had arrested plaintiff after

seeing him in a common area of the building holding a plastic bag containing drugs and after plaintiff attempted to run from the officers.

30.     The acts of the March 3, 2008 Arresting Officers in furtherance of their scheme to frame plaintiff included the following:

    a. One or more of the March 3, 2008 Arresting Officers prepared police reports containing the false story, and each of the other March 3, 2008 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights;

    b. One or more of the March 3, 2008 Arresting Officers attested through the official police reports that they witnessed the false story, and each of the other March 3, 2008 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights;

    c. Defendant Watts formally approved one or more of the official police reports, knowing that they contained the false story; and

    d. One or more of the March 3, 2008 Arresting Officers communicated the false story to prosecutors, and each of the other March 3, 2008 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights.

31.     The wrongful acts of the March 3, 2008 Arresting Officers were performed with knowledge that the acts would cause plaintiff to be wrongfully held in custody and falsely prosecuted for an offense that had never occurred.

32.     Plaintiff was charged with drug possession in Cook County Case Number 08-CR-06802 because of the wrongful acts of the March 3, 2008 Arresting Officers.

33.     Plaintiff knew that proving that the March 3, 2008 Arresting Officers had concocted the charges against him would not be possible.

34.     Accordingly, even though he was innocent, plaintiff, pleaded guilty to drug possession on April 22, 2008, and received a thirty-month prison sentence.

35.     Plaintiff was deprived of liberty during his incarceration because of the above-described wrongful acts of the March 3, 2008 Arresting Officers.

36.     Plaintiff was continuously in custody from his arrest on March 3, 2008 until he was released on parole from the Illinois Department of Corrections on December 2, 2008.

### V.     The Third False Arrest and Illegal Prosecution of Plaintiff

37.     On July 16, 2009, plaintiff was arrested by defendants Bolton, Gonzalez, Jones, Leano, Lewis, Nichols, Smith, and Watts (the "July 16, 2009

Arresting Officers") while plaintiff was lawfully walking on 43rd Street near Cottage Grove Avenue near the Ida B. Wells Homes.

38. At the time of plaintiff's arrest:

a. None of the July 16, 2009 Arresting Officers had a warrant authorizing the arrest of plaintiff;

b. None of the July 16, 2009 Arresting Officers believed that a warrant had been issued authorizing the arrest of plaintiff;

c. None of the July 16, 2009 Arresting Officers had observed plaintiff commit any offense; and

d. None of the July 16, 2009 Arresting Officers had received information from any source that plaintiff had committed an offense.

39. After arresting plaintiff, the July 16, 2009 Arresting Officers conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

40. The false story fabricated by the July 16, 2009 Arresting Officers included their false claim that they had arrested plaintiff after seeing him throw a bag containing drugs into some bushes.

-10-

41.    The acts of the July 16, 2009 Arresting Officers in furtherance of their scheme to frame plaintiff included the following:

    a.  One or more of the July 16, 2009 Arresting Officers prepared police reports containing the false story, and each of the other July 16, 2009 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights;

    b.  One or more of the July 16, 2009 Arresting Officers attested through the official police reports that they witnessed the false story, and each of the other July 16, 2009 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights;

    c.  Defendant Watts formally approved one or more of the official police reports, knowing that they contained the false story; and

    d.  One or more of the July 16, 2009 Arresting Officers communicated the false story to prosecutors, and each of the other July 16, 2009 Arresting Officers failed to intervene to prevent the violation of plaintiff's rights.

42.    The wrongful acts of the July 16, 2009 Arresting Officers were performed with knowledge that the acts would cause plaintiff to be

-11-

wrongfully held in custody and falsely prosecuted for an offense that had never occurred.

43. Plaintiff was charged with drug possession in Cook County Case Number 09-CR-14548 because of the wrongful acts of the July 16, 2009 Arresting Officers.

44. Plaintiff knew that proving that the July 16, 2009 Arresting Officers had concocted the charges against him would not be possible.

45. Accordingly, even though he was innocent, plaintiff, pleaded guilty to drug possession on January 4, 2010, and received a two-year prison sentence.

46. Plaintiff was deprived of liberty during his incarceration because of the above-described wrongful acts of the July 16, 2009 Arresting Officers.

47. Plaintiff was continuously in custody from his arrest on July 16, 2009 until he was released on parole from the Illinois Department of Corrections on January 11, 2011.

### VI. Plaintiff's Exonerations

48. Plaintiff challenged his convictions after he learned that federal prosecutors and lawyers for other wrongfully convicted individuals had discovered the Watts Gang's criminal enterprise.

49. On February 13, 2018, the Circuit Court of Cook County granted the State's motion to set aside plaintiff's conviction in Case Number 06-CR-09651-02; immediately thereafter, the Court granted the State's request to *nolle prosequi* the case.

50. On March 15, 2018, the Circuit Court of Cook County granted plaintiff a certificate of innocence in Case Number 06-CR-09651-02.

51. On April 16, 2018, the Circuit Court of Cook County granted the State's motion to set aside plaintiff's convictions in Case Number 08-CR-06802 and 09-CR-14548; immediately thereafter, the Court granted the State's request to *nolle prosequi* both cases.

52. On April 27, 2018, the Circuit Court of Cook County granted plaintiff certificates of innocence in Case Number 08-CR-06802 and 09-CR-14548.

### VII. Plaintiff's Arrest and Prosecution Were Part of a Long-Running Pattern Known to High Ranking Officials within the Chicago Police Department

53. Before the Watts Gang engineered plaintiff's above-described wrongful arrests, detentions, and prosecutions, the Chicago Police Department had received numerous civilian complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

54.     Criminal investigators corroborated these civilian complaints with information they obtained from multiple cooperating witnesses.

55.     Before the Watts Gang engineered plaintiff's above-described wrongful arrests, detentions, and prosecutions, defendants Cline and Kirby knew about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang and knew that criminal investigators had corroborated these allegations.

56.     Defendants Cline and Kirby also knew, before the Watts Gang engineered plaintiff's above-described wrongful arrests, detentions, and prosecutions, that, absent intervention by the Chicago Police Department, Watts and his gang would continue to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges.

57.     The Internal Affairs Division of the Chicago Police knew about the lawlessness of Watts and his gang by 2004.

58.     Defendants Cline and Kirby had the power and the opportunity to prevent Watts and his gang from continuing to engage in the above-described wrongdoing.

59.     Defendants Cline and Kirby deliberately chose to turn a blind eye to the pattern of wrongdoing by Watts and his gang.

60.    As a direct and proximate result of the deliberate indifference of defendants Cline and Kirby, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiff, as described above.

### VIII.    Official Policies and Customs of the Chicago Police Department Were the Moving Force behind the Defendants' Misconduct

61.    At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated and condoned the Defendants' misconduct.

### A. Failure to Discipline

62.    At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

63.    Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

64. Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

65. Before the Watts Gang engineered plaintiff's above-described wrongful arrests, detentions, and prosecutions, the individual officer defendants had been the subject of numerous formal complaints of official misconduct.

66. As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiff, as described above.

### B. Code of Silence

67. At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

68. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

69. This "code of silence" facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

70. Consistent with this "code of silence," the few people within the Chicago Police Department who stood up to Watts and his gang or who attempted to report their misconduct were either ignored or punished, and the Watts Gang was thereby able to engage in misconduct with impunity.

71. Watts and his gang are not the first Chicago police officers whom the City of Chicago allowed to abuse citizens with impunity while the City turned a blind eye.

72.     One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

73.     Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

74.     Finnigan and his crew engaged in their misconduct at around the same time that plaintiff was subjected to the abuses described above.

75.     Finnigan, like the defendants in this case, had been the subject of many formal complaints of misconduct.

76.     Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

77.     Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

78.     Defendant Mohammed pleaded guilty in 2012.

79.     Defendant Watts pleaded guilty in 2013.

80.     In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

81.     In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

82.     In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

83.     In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

84.     The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful arrests, detentions, and prosecutions described above.

85. As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiff, as described above.

## IX.   Claims

86. As a result of the foregoing, all of the defendants caused plaintiff to be deprived of rights secured by the Fourth and Fourteenth Amendments.

87. As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to three malicious prosecutions under Illinois law.

88.     Plaintiff hereby demands trial by jury.

WHEREFORE plaintiff requests that appropriate compensatory and punitive damages be awarded against the individual defendants and that appropriate compensatory damages only be awarded against defendant City of Chicago, and that the Court award fees and costs against defendants.

/s/  Joel A. Flaxman
Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
KENNETH N. FLAXMAN P.C.
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200
jaf@kenlaw.com
*attorneys for plaintiff*